John NORTHROP, Plaintiff,

v.

Dr. Clyde KIRBY, Individually and as President of the Birmingham Board of Education, Ossie Ware Mitchell, Individually and as Vice President of the Birmingham Board of Education, Bettye F. Collins, Individually and as a member of the Birmingham Board of Education, Dr. William C. Morgan, Individually and as a member of the Birmingham Board of Education, Alton B. Parker, Jr., Individually and as a member of the Birmingham Board of Education; Dr. Wilmer S. Cody, Individually and as Superintendent and Secretary of the Birmingham Board of Education, Defendants.

Civ. A. No. 77–G–0107–S.

United States District Court,
N. D. Alabama, S. D.

June 30, 1978.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff.

William G. Somerville, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

This action has been brought by a former employee of the Birmingham Board of Education who has asserted that his contract was improperly terminated by the Birmingham Board of Education. This Court has jurisdiction over this matter pursuant to Title 42 U.S.C. § 1983, Title 28 U.S.C. § 1331 and § 1343 and the First and Fourteenth Amendments to the United States Constitution. The Court's pendent jurisdiction has also been asserted to redress viola-

tions of Code of Alabama, Title 52, §§ 351–361.[1]

Plaintiff has contended that his contract of employment with the Birmingham Board of Education (hereinafter referred to as "the Board") was extended by presumption of law under the Code of Alabama for the period May 29, 1976, to May 29, 1977, when the Board failed to terminate his employment pursuant to the procedures required by Title 52. Plaintiff has also contended that the Board of Education acted beyond its powers in terminating his contract prior to its expiration on May 29, 1977, and without the recommendation of the Superintendent, Dr. Wilmer Cody, as required by Title 52, §§ 158, 165 and 241 of the Code of Alabama. Plaintiff has further contended that his termination was without the protection of the substantive and procedural due process of law as guaranteed by the Fourteenth Amendment and violative of the rights of freedom of speech and association under the First Amendment. Therefore, Plaintiff has come to this Court seeking reinstatement, back pay, attorneys' fees, and permanent injunctive relief against further violations of his constitutional and statutory rights.

The relevant facts before the Court are that on February 10, 1976, Mr. John O. Northrop and the Birmingham Board of Education entered into a contract of employment appointing Northrop to the position of Public Information Disseminator. Mr. Northrop's employment, pursuant to the written terms of the contract, was to begin on February 9, 1976 and terminate on May 28, 1976. Plaintiff was continued in his employment beyond May 28, 1976, until officially terminated by the Board of Education on January 31, 1977.

Plaintiff has contended that his employment did not terminate on May 28, 1976, as specified in the initial contract, but rather states that he was re-employed for the subsequent 1976–1977 school year pursuant to

applicable Alabama law. Plaintiff's contention relies upon the applicability of the provisions of Chapter 13 (§§ 351–361(3)), Title 52, Code of Alabama 1940. Particularly, Plaintiff relies on the provisions of § 361(2) of Title 52, providing that

Any teacher in the public schools, whether in continuing service status or not, shall be deemed offered re-employment for the succeeding school year at the same salary, unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed . . . . .

The provisions of §§ 351–361(3) of Title 52, however, are wholly inapplicable to the Plaintiff for the simple reason that the Plaintiff, being support personnel and not eligible for continuing service status, was not a "teacher" within the definition of § 351. A teacher pursuant to § 351 is

[D]eemed to mean and include all persons regularly certificated by the teacher certificating authority of the state of Alabama who may be employed as instructors, principals, or supervisors in the public elementary and high schools of the state of Alabama.

It is undisputed that Mr. Northrop was not within the § 351 definition of a teacher. Consequently, it is apparent to the Court that §§ 351–361(3) would have no application to Mr. Northrop's employment and Plaintiff, therefore, would not and should not be included in the automatic re-employment provisions of § 361(2). Moreover, a cursory examination of the contract clearly reveals that the Board of Education and Northrop entered into an employment agreement on the wrong contract form. Testimony of Dr. Cody confirms this fact that Northrop should not have been employed under the provisions of a certified teacher, but rather should have been employed under an open-ended contract desig-

---

**1.** This action was originally brought under provisions of the Code of Alabama, 1940, recompiled 1958. Since this action was filed, the State of Alabama has adopted the 1975 Code. Realizing that all pleadings, hearings, briefs

and trial of this matter were addressed under the 1940 Code, this Court, for convenience, will cite provisions pursuant to the Code of Alabama, 1940.

nated for support personnel. This mutual mistake however did not affect Northrop's employment since his initial contract period was honored by the Board of Education.

The law of contracts in Alabama is clear that "a contract of employment for a definite period terminates by its own terms at the end of such period." 56 C.J.S. *Master and Servant* § 30 p. 411. It is only when the employment continues for an indefinite period, after the expiration of the original employment, that the employment may be terminated at will by either party. 56 C.J.S. *Master and Servant* § 30 supra; *Summers v. Ralston Purina Co.*, 260 Ala. 166, 69 So.2d 858 (1954); *Peacock v. Virginia-Carolina Chemical Co.*, 221 Ala. 680, 130 So. 411 (1930); *National Life Ins. Co. of U. S. v. Ferguson*, 194 Ala. 658, 69 So. 823 (1915).

The necessary effect of this concept of contract law, in essence, would be that Plaintiff "held his position at the will and pleasure" of the Board of Education. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Consequently, Northrop's employment for a definite period of time expired on May 28, 1976, and his employment by the Board thereafter could have been terminated at will by either party.

This effectively gave the superintendent and the Board of Education the discretion to terminate Plaintiff's employment, whenever this termination was "in the best interest of the schools." Title 52, § 165.

The evidence is clear that Northrop's employment was terminated in accordance with the applicable provisions of Alabama law. His termination as of January 31, 1977 was recommended by Dr. Cody at a December Board meeting, and was subsequently approved by the Board. Title 52, § 165 and § 187.

It is well established that, in the context of terminations of employment of public employees, there is no constitutional requirement of a hearing and there is no federal right of action under Title 42 U.S.C. § 1983 unless the plaintiff had a "property"

or "liberty" interest in his employment status. *Bishop v. Wood*, supra; *Robinson v. Jefferson County Board of Education*, 485 F.2d 1381 (5th Cir. 1973). It would "[stretch] the concept too far to suggest that a person is deprived of 'liberty' when he simply is not retained in one [position] but remains as free as before to seek another." *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "This same conclusion [would apply] to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for discharge." *Bishop v. Wood*, supra, 426 U.S. at 348, 96 S.Ct. at 2079. Under controlling case authority, it is clear to the Court that an employee terminable at will does not have a property interest in his employment.

The series of events which culminated in this action were in large part the same events as previously decided by this Court in the intervention of John Katopodis into the Birmingham Board of Education case. *Dwight Armstrong et al., Plaintiffs, United States of America, Plaintiff-Intervenor, Gregory John Katopodis, Plaintiff-Intervenor, v. The Board of Education of the City of Birmingham, Alabama et al., Defendants*, 430 F.Supp. 595 (N.D.Ala.1977). In that particular case, this Court, basing its decision on state statutory provisions, decided that Mr. Katopodis was improperly terminated by the Board and ordered his reinstatement with back pay.

Although the facts are essentially similar, this Court is of the opinion that the *Katopodis* decision can be properly distinguished from *Northrop*. The *Katopodis* decision was decided by this Court on plaintiff's motion for summary judgment. The Court based its ruling on the limited facts presented to the Court by affidavits and arguments of counsel. At the time of that hearing, the Court was either mistaken, misled, or totally uninformed of the status of the "annual school budget." The Court was clearly under the assumption that the budget was final and only necessary changes were being made. After hearing

*all* facts, *ore tenus*, in the *Northrop* matter, the Court is now aware that this assumption was incorrect. The testimony of several Board members and Dr. Cody clearly show that the October 12, 1976, budget was merely tentatively approved.

It was soon after this tentative approval that the Board began a full-scale review of the budget with an eye toward certain provisions. It was during this process that the Board on December 13, 1976, recommended the abolition of the position of Special Assistant to the Superintendent and also the Communications Department in which Plaintiff was employed.

The decision by the Board to eliminate the position of Special Assistant to the Superintendent was not done by the Board in "the best interest of the schools" as required under Alabama statute. Title 52, § 165. Instead, this elimination was done arbitrarily and capriciously by the Board for purely personal reasons. Otherwise, had this dismissal not been personal, the Board would have approved Dr. Cody's recommendation that Katopodis be transferred to the position of Coordinator of ESAA (Emergency School Administrative Act) Special Project. *Armstrong v. Birmingham Board of Education*, supra.

Moreover, at the time this Court made its decision in *Katopodis*, the Court specifically refrained from addressing the constitutional issues; thus, basing its decision solely on violations of applicable Alabama law. Had the Court proceeded to address the constitutional issues, the Court would have found the Board guilty of depriving Katopodis of his due process of law as guaranteed by the Fourteenth Amendment.

■ "In order to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, supra. Katopodis, having a contract that by its own terms did not end until June 30, 1977, was clearly entitled to a property interest *during* the life of his contract. Consequently, regardless of the reasons for discharge, Katopodis could not

have been terminated without according Katopodis an opportunity to be heard.

Irrespective of the property interest, Katopodis could not have been discharged by the Birmingham Board of Education. By terminating his employment without recommendation of the superintendent, the Board explicitly violated applicable Alabama law. Title 52, §§ 165 and 187. This violation alone was sufficient to warrant the Court to reinstate Katopodis.

Although the factual situations of the two individuals were very similar, the circumstances of Northrop's termination are substantially different from that of Katopodis. The Plaintiff should be reminded that the annual school budget was submitted to the Board as a "Proposed General Fund Budget." It was approved by the Board as a "Tentative Budget" at the October 12, 1976 meeting. Final budgetary revisions were not made until subsequent Board meetings.

Facing a possible budget deficit, the Board was compelled to make substantial changes in the "Tentative Budget" in order to avoid violating applicable Alabama law. Title 52, § 242. One of these revisions was to abolish the Communications Department for the 1976–1977 school term.

This decision to abolish the department was not based on any arbitrary and capricious conduct by the Board but rather was made for purely budgetary reasons. Confronting a dilemma in school appropriations, the Board decided "in the best interest of the schools" that the functions of this particular department "could be transferred somewhere else and absorbed within other personnel in the system." Deposition of Mrs. Betty Collins, p. 17.

It was only after the decision was made to abolish the Communications Department that the individuals affected were made known to the Board. Therefore, it is clear to the Court that the Board's decision to abolish the department was not done for personal reasons.

Plaintiff has based his federal claims on deprivation of procedural due process as required by the Fourteenth Amendment to the United States Constitution. In order to be entitled to these due process considerations, Plaintiff must prove the existence of a property interest in his contract. Recent decisions of the United States Supreme Court and the Fifth Circuit Court of Appeals clearly show that an employee has no property interest in employment, when his employment under applicable state law is terminable at the discretion or will of the employer. *Bishop v. Wood,* supra; *Robinson v. Jefferson County Board of Education,* supra; *Kelly v. West Baton Rouge Parish School Board,* 517 F.2d 194 (5th Cir. 1975); *LaBorde v. Franklin Parish School Board,* 510 F.2d 590 (5th Cir. 1975).

Having failed to prove this existence of a property interest in his employment status, Plaintiff has made out no claim cognizable in the federal courts.

Nonetheless, Plaintiff's termination was proper pursuant to applicable Alabama law. Title 52, §§ 165 and 187. Unlike Katopodis, Dr. Cody properly recommended Northrop's termination which was subsequently approved by the Board.

In hindsight the only fault the Board may have been guilty of in Northrop's regard was mistaken judgment. It is now clear to the Board that little or no money was saved in the general fund budget by abolishing the Communications Department; the reason being that several individuals were paid by federal funds instead of through the general fund budget. However, mistaken judgment does not rise to constitutional standards requiring federal judicial review. *Bishop v. Wood,* supra.

An order will be entered accordingly.